## BALTIMORE CITY COURT

Filed March 15, 1898.

JOHN K. COWEN AND OSCAR G. MURRAY, RECEIVERS.

VS.

GRAHAM & COMPANY.

*H. R. Preston* and *M. V. Tyson* for plaintiffs.

*Robert H. Smith* and *Foster & Foster* for defendants.

WRIGHT and STOCKBRIDGE, JJ.—

Graham & Company, the owners of certain barges and lighters, were employed by the York River Line to lighter 88 hogsheads of tobacco from the steamer "Charlotte" to the steamship "Sedgemoor," lying at the wharves of the plaintiffs. Under the custom of the Port, this freight was liable to half wharfage charges, although loaded directly from the lighter to the steamship, and the present suit has been brought to recover that wharfage from the defendants, the owners of the lighters.

The case presents but a single point for determination, namely, whether the defendant firm is legally liable or not? That the owner of a wharf, whether public or private, is entitled to compensation for its use, actual or constructive, is too firmly established to be a debatable question, and the reasonableness of the charge of half

wharfage for merchandise placed upon a steamship directly from a lighter is practically conceded, and uniform practice or custom of the port. The defendants do not deny that the plaintiffs are entitled to recover, but claim that recovery must be had from other parties than the present defendants.

This freight was what is commonly known as *through freight*, that is, freight for which a bill of lading is given at some point in the Southern States through to Liverpool. It is conceded by the plaintiffs that if the shipper was a resident of this port the bill for wharfage could properly be demanded of the shipper, and the practice to do so was clearly established by the evidence. But it is claimed that in the case of through freight the wharfinger has the right to make the demand for his wharfage from the carrier from whom the goods are received, that is, from the lighterman; that the carrier who receives the freight from the shipper and issues the bill of lading is but the agent of the shipper, and since the shipper would be primarily liable, so each successive carrier in turn is an agent of the shipper, and that the owner of the lighter is one link in the chain of carriers.

If the evidence substantiated this claim the demand of the wharfinger is undoubtedly legal and just, but the evidence must fully measure up to it.

The bill of lading issued by the Southern Railway Company or the York River Line contains two distinct classes of conditions, one relating to the freight while in transit to Baltimore, and the second covering the transportation thence by the "Johnson Line" to the port of final destination. Reservation of the right to convey the goods by lighter at the option of the carrier is distinctly reserved to the carrier, but by the bill of lading and the contract embodied in it, such lighterage is nowhere made a distinct portion of the carriage.

When such freight arrives in Baltimore it would of course be entirely possible for the York River Steamer to be laid alongside the Transatlantic Steamer, and the freight passed directly from the one to the other, but for the mutual convenience of the two carriers this is rarely or never done, but instead the lighter is used as a medium of transfer, and these facts further tend to show that the lighter

is not a distinct link in a chain of carriers, but the mere hand or instrumentality of one, or it may be both of them. This is still further shown in the manner in which the business is conducted by the carriers. When the Transatlantic Steamer is ready for the freight a notice to that effect is addressed, not to the lighterman, but to the local carrier, in this case the York River Line, to deliver certain specified freight, which is then placed on the lighter and delivered in accordance with the notice, and receipted for by the carrier, the Johnson Line, to the York River Line, and *not* to the lighter which actually brings it alongside of the ship. This mode of conducting the business also excludes the idea of the lighter as a link in the chain of carriers under which the defendant could be held liable for wharfage charges as an agent of the shipper.

But it is further sought to fasten the liability for wharfage upon the defendants by reason of a notice dated on the 26th of June, 1897, to the effect that from and after the 15th of July, 1897, the wharfinger would look to and require such charge to be paid by the owner of the lighter. Now, the proposition is self-evident that a notice will not of itself create a legal liability, unless there be an independent right under which the defendant could be held either without, or a consequence of such notice. In the case at bar that right must find its origin in the relation of principal and agent between the consignor or consignee of the freight and the lighterman, a relation which is not only shown to exist, but which is distinctly negatived by all the acts of all parties to the contract of transportation, and therefore no such independent right appears as would form the basis for legal liability, even though such notice be given. Under the theory of the plaintiffs, they have but to serve a notice, and that act of theirs creates an agency for a consignor which he never sanctioned, and in all probability never knew of, and then under an agency so created the agent would be absolutely liable to the wharfinger for his charges. No authority has been cited, nor has any been found by the Court to sustain so radical a proposition. The judgment below will therefore be reversed, and a judgment entered for the defendant.

*Judgment reversed.*